Clarence ELLIS, Plaintiff-Appellant,

v.

ROCKY MOUNTAIN EMPIRE SPORTS,
INC., d/b/a the Denver Broncos, and
John Ralston, Defendants-Appellees,

and

John D. Leidholt and Denver Orthopedic
Clinic, P.C., Defendants.

No. 78–1196.

Colorado Court of Appeals,
Div. I.

Aug. 23, 1979.

Rehearing Denied Sept. 13, 1979.

O'Connor, Miller, Doores, Bogue & Parish, P.C., James R. Miller, Lowery, Right & Glicksman, Howard J. Glicksman, Denver, for plaintiff-appellant.

Hughes & Dorsey, Michael W. Lillie, Denver, for defendant-appellee Rocky Mountain Empire Sports, Inc., d/b/a The Denver Broncos.

Roath & Brega, P.C., Charles F. Brega, Robert C. Kaufman, Denver, for defendant-appellee John Ralston.

VAN CISE, Judge.

Plaintiff, Clarence Ellis, appeals from the summary judgments entered on motions of defendants Rocky Mountain Empire Sports, Inc. (the Broncos) and John Ralston. We affirm.

Plaintiff was a football player. After graduating from Notre Dame in 1972, he was a first round draft pick of the Atlanta Falcons in the National Football League (NFL), and played free safety for three years. He was then traded to the Denver Broncos in May 1975. A month before the trade, Ellis had injured his knee while playing basketball. After coming to Denver, the knee was surgically repaired and Ellis began a rehabilitation program under the guidance of the Bronco organization.

Ellis then reported to the Bronco pre-season training camp in Palo Alto, California. He there continued his rehabilitation program. On August 1, 1975, Ellis engaged in a contact practice drill with the other players and re-injured his knee. He was unable to play during the 1975 football season, and, after failing to pass the team physical examination in the spring of 1976, he was placed on waivers.

Ellis commenced this action in August 1977 against the Broncos, John Ralston (the head coach at the time of his injury), Dr. Leidholt (the team physician), and Denver Orthopedic Clinic, P.C. The claims against Dr. Leidholt and the Clinic have not yet been acted upon by the trial court and are not involved in this appeal. *See* C.R.C.P. 54(b).

In his complaint, Ellis alleged that Ralston and the Broncos negligently and intentionally required him to engage in contact football drills before he had fully recovered from the off-season knee injury, and that this activity caused further injury to his knee, as a result of which he was entitled to compensatory and exemplary damages (counts 1, 2, and 5). He further averred that, by this action, the Broncos breached their agreement to render necessary medical care (count 4). Finally, he claimed that additional money was owing to him from the Broncos under the contracts for the 1975 and 1976 football seasons (counts 6 and 7).

The Broncos and Ralston moved for summary judgments as to all counts applicable to them, on the grounds, among others: (1) That all the claims pertaining to the Broncos were barred by reason of the failure of Ellis to comply with the mandatory arbitration requirements of his contract; and (2) that Ellis' personal injury claims against both defendants were barred by reason of the Colorado Workmen's Compensation Act. The trial court granted these motions on the grounds stated, and entered judgments accordingly. On appeal, Ellis claims error in each of the above rulings.

### I. Arbitration

The trial court concluded that Ellis was bound by the arbitration clause contained in

his standard player contract, and therefore dismissed without prejudice all claims against the Broncos so that the disputes could proceed to arbitration. That clause provided that:

"All matters in dispute between the Player and the Club shall be referred to the Commissioner and his decision shall be accepted as final, complete, conclusive, binding and unappealable, by the Player and by the Club."

Ellis contends that this arbitration clause is not enforceable against him. We do not agree.

■ Arbitration is favored in Colorado. *See* Colo.Const. Art. XVIII, Sec. 3. Agreements to arbitrate are enforceable, and actions based on disputes subject to arbitration have been held properly dismissed for failure to comply with the condition precedent. *See, e. g., Guthrie v. Barda*, 188 Colo. 124, 533 P.2d 487 (1975); *Dominion Insurance Co. Ltd. v. Hart*, 178 Colo. 451, 498 P.2d 1138 (1972); *Ezell v. Rocky Mountain Bean & Elevator Co.*, 76 Colo. 409, 232 P. 680 (1920).

■ An "unlimited arbitration clause," as in this case, requires "arbitration of any and all disputes arising out of [the] contract." *International Service Insurance Co. v. Ross*, 169 Colo. 451, 457 P.2d 917 (1969). And, "in Colorado an arbitrator is the final judge of both the law and the fact, and his award is final in the absence of fraud or similar misconduct." *Ross, supra.*

Ellis asks that we hold this arbitration clause unenforceable on the ground of unconscionability. We decline to do so.

■ The standard player contract was the product of collective bargaining between the players' association and the NFL member clubs, and Ellis is bound by his union's decision. *See NLRB v. Allis-Chalmers Mfg. Co.*, 388 U.S. 175, 87 S.Ct. 2001, 18 L.Ed.2d 1123 (1967). Arbitration provisions within collective bargaining agreements are favored, *see United Steel Workers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960) and these two collective bargaining units are not in a dominant-servient relationship nor does there exist a serious disparity of bargaining power between them. *See Goldberg, A Supreme Court Judge Looks at Arbitration*, 20 Arb.J. 13 (1965).

■ Ellis argues that, without regard to the illegality of the procedure, it would be wholly inequitable to allow the Commissioner, who was selected by and serves at the pleasure of the club owners, to be the arbitrator. However, we need not decide this issue because Ellis has another option open to him. The trial court properly held that, although not required to do so because he was not an association member at the time it was executed, Ellis could accept the benefits of the 1977 Collective Bargaining Agreement between the players' association and the clubs, which was retroactive to 1974 before the time Ellis signed his contract. By so doing, he may have the benefits of the arbitrators named therein, rather than being compelled to accept the commissioner named in the player contract. Any time limit restrictions on notices called for in the above referred to Agreement have been specifically waived by the Broncos.

Hence, the trial court's judgment dismissing the claims against the Broncos was properly entered.

## II. Applicability of Workmen's Compensation Act

■ In this opinion, we are viewing the Workmen's Compensation Act as it existed on August 1, 1975, the date of the injury. Some articles and sections were repealed and numerous amendments were made by the General Assembly effective September 1, 1975, and thereafter. Those amendments are not applicable to this case. *See City of Westminster v. Hyland Hills Metropolitan Park & Recreation District*, 190 Colo. 558, 550 P.2d 337 (1976); *City of Littleton v. Schum*, 38 Colo.App. 122, 553 P.2d 399 (1976).

The parties concede that the Broncos were "employers" within the Act, § 8–41–105, C.R.S.1973, that Ellis and Ralston were both "employees," § 8–41–106, C.R.S.1973, and that the Broncos had complied with all pertinent provisions of the Act. Also, there is no dispute that the injury occurred in the

course of and within the scope of Ellis' employment.

 Section 8–42–102, C.R.S.1973, provided:

"An employer who has elected to comply and has complied with the provisions of articles 40 to 54 of this title, [shall not be] subject to any other liability for the death of or personal injury to an employee, except as provided in said articles."

Section 8–43–103, C.R.S.1973, provided that an employee who has not "opted out" was subject to the provisions of the Act. Ellis had not opted out. Section 8–43–104, C.R.S.1973, provided that if the employee did not opt out, he surrendered his "rights to any method, form, or amount of compensation or determination thereof or to any cause of action, action at law, suit in equity, or statutory or common law right, remedy, or proceeding for or on account of such personal injuries or death of such employee other than as provided in said articles . . . ." Unless otherwise provided in the Act, neither the employer, see *Alexander v. Morrison-Knudsen Co.*, 166 Colo. 118, 444 P.2d 397 (1968), nor a fellow employee, see *Sieck v. Trueblood*, 29 Colo.App. 432, 485 P.2d 134 (1971); *Nelson v. Harding*, 29 Colo.App. 76, 480 P.2d 851 (1970), was subject to a separate action for an injury sustained by an employee acting within the course of his employment. The employee's only remedy was a claim for workmen's compensation. *Hilzer v. MacDonald*, 169 Colo. 230, 454 P.2d 928 (1969).

Ellis seeks to avoid this result, and contends that the Act did not apply to intentional torts, even when they occurred in the course of employment. Thus, he asserts that his intentional tort claims against Ralston and the Broncos contained in counts 1 and 2, which at oral argument were revealed to be intentional infliction of emotional distress and outrageous conduct, are not limited to the remedies specified in the Act. We do not agree.

 The basic principles set forth above are not changed because of the nature of the incident causing injury. Contrary to Ellis' argument, intentional torts are covered under the Act, and compensation awards may be made for injuries suffered from intentional acts of co-employees. *See Packaging Corporation of America v. Roberts*, 169 Colo. 316, 455 P.2d 652 (1969); *Alpine Roofing Co. v. Dalton*, 36 Colo.App. 315, 539 P.2d 487 (1975).

We therefore hold that Ellis' exclusive remedy for his negligence and intentional tort claims is as provided for under the Workmen's Compensation Act, and he is barred from bringing this common law action for his injury. The trial court properly dismissed the claims against Ralston.

### III.

In view of the disposition of this appeal on the grounds set forth in I and II above, we do not address the issue as to whether the trial court was correct in holding that Ellis' prayers for exemplary damages in counts 1, 2 and 5 were barred by the one year statute of limitations pertaining to suits for any penalty or forfeiture, § 13–80–104, C.R.S.1973.

Judgments affirmed.

COYTE and STERNBERG, JJ., concur.