**FIRST NATIONAL BANK OF LAKE-WOOD, Plaintiff–Appellant,**

v.

**UNION TAVERN CORPORATION, a Colorado corporation, Jeffrey B. Selby, James Barton Nowell, and Allen Gerstenberger, Defendants–Appellees.**

No. 89CA0506.

Colorado Court of Appeals, Div. V.

May 24, 1990.

Robinson, Waters, O'Dorisio and Rapson, P.C., Peter A. Robinson, Martha J. Bohling, Denver, for plaintiff-appellant.

Welborn, Dufford, Brown & Tooley, P.C., Gregory A. Ruegsegger, S. Kirk Ingebretsen, Scott J. Mikulecky, Denver, for defendants-appellees.

Opinion by Judge DUBOFSKY.

Plaintiff, First National Bank of Lakewood, appeals the trial court's order granting the motion for restitution by defendants, Union Tavern Corporation, Jeffrey B. Selby, James B. Nowell, and Allen Gerstenberger. We affirm in part and reverse in part.

Defendants, signatories to a promissory note executed in 1984, made the scheduled payments on the note for two years, but they failed to make the $5,000 payment due on March 15, 1986. The note provided for acceleration of the loan and higher interest in the event of a default in payment. On March 27, 1986, plaintiff accelerated the note and applied to the loan $100,000 in certificates of deposit that had been previously given as security. Thereafter, on June 18, 1986, plaintiff commenced a collection action on the note.

Section 5–5–112, C.R.S. (1989 Cum.Supp.) of the Uniform Consumer Credit Code (U.C.C.C.) requires that a lender notify the borrower of its right to cure default payments before an acceleration of closing on certain secured items can be made. The trial court, however, ruled that the U.C.C.C. did not apply to the transaction. It determined that plaintiff's actions were proper when it declared a default and then accelerated the note without first giving defendants notice of their right to cure the default.

In an earlier appeal of this matter, *First National Bank v. Union Tavern Corp.,* (Colo.App. No. 87CA0098, September 8, 1988) (not selected for official publication), this court reversed the trial court and held § 5–5–112 applied to this transaction as the security agreement and financing statements specifically referenced and incorporated that section as part of the parties' agreement. In that opinion, this court did not determine whether the plaintiff had complied with the provisions of § 5–5–112.

On remand, defendants sought restitution of the attorney fees awarded and the difference between the interest rate it was paying on the note (13 percent) and the default interest rate (18 percent) defendants were obligated to pay because of the trial court's judgment in the first proceeding. Other than these disputed amounts, the note has been otherwise paid in full. The trial court granted defendant's motion for restitution and concluded the acceleration of the note was improper.

I.

For the first time on appeal, defendants argue that they have an absolute right to restitution of the funds paid regardless of the "equities" of the case or the merits of plaintiff's claims to keep the funds. *See De Mayo v. Lyons,* 360 Mo. 512, 228 S.W.2d 691 (1950). However, since this argument was not raised in the trial court, we decline to address it here. *See Stone v. Chapels for Meditation, Inc.,* 33 Colo.App. 346, 519 P.2d 1233 (1974). Moreover, we note that the parties have fully briefed the other argument concerning right to restitution and the trial court's order was entered in response to those arguments.

II.

Plaintiff argues it was error for the trial court to grant defendant's motion for restitution of $26,975.26 awarded plaintiff for attorney fees. We disagree.

Section 5–5–112, C.R.S. (1989 Cum. Supp.), provides that:

"[A]fter a default consisting only of the debtor's failure to make a required payment, a creditor, because of that default, may neither accelerate maturity of the unpaid balance of the obligation nor take possession of or otherwise enforce a security interest in the goods ... that are collateral until twenty days after a notice of the debtor's right to cure (section 5–5–111) is given. Until the expiration of the minimum applicable period after the notice is given, the debtor may cure all defaults consisting of a failure to make the required payment by tendering the amount of unpaid sums due at the time of the tender, without acceleration, plus any unpaid delinquency or deferral charges. *Cure restores the debtor to his rights under the agreement as though the defaults had not occurred.*" (emphasis added)

Plaintiff argues that the award of attorney fees was still proper even though notice was not given prior to the acceleration of the note. It also contends it cured the defect of no notice by providing necessary statutory notice on October 10, 1986, and this notice should be applied retroactively to cure the defect of no notice when the note was accelerated. We reject these arguments.

At the time of acceleration, plaintiff also foreclosed on two certificates of deposit. The October 10, 1986, notice was given ten months after the time plaintiff accelerated the loan and four months after it brought suit to collect the amount due on the note.

■ A lender must strictly comply with the notice provisions of the U.C.C.C. before it can accelerate a loan and repossess collateral. *Farmers State Bank v. Haflich,* 10 Kan.App.2d 333, 699 P.2d 553 (1985). Section 5–5–112 permits acceleration only after a notice of a debtor's right to cure is given. We agree, therefore, with the trial court that plaintiff's acceleration of the loan prior to the giving of notice was improper.

■ Plaintiff next argues that it is entitled to attorney fees incurred after the date notice was given. We disagree.

The trial court concluded, based upon ample evidence, that the claim for attorney fees resulted from plaintiff's efforts to enforce the note without reference to, and irrespective of, the subsequent notice and that there is no causal nexus between the subsequent notice and the attorney fees. At the initial hearing, plaintiff belatedly introduced into evidence the subsequent notice and agreed that it was essentially irrelevant to the issues before the trial court. Thus, the attorney fees at issue here resulted entirely from pursuit of an erroneous judgment. Therefore, the trial court, in its initial judgment, improperly awarded attorney fees to plaintiff, and plaintiff may not recover such fees either for the time before or after the notice was given. *See Zambruk v. Perlmutter 3rd Generation Builders, Inc.,* 32 Colo.App. 276, 510 P.2d 472 (1973).

### III.

■ Plaintiff next argues it was error for the trial court to grant defendants' motion for restitution of $15,707.15 for the difference between the default interest paid on the accelerated loan balance (18 percent) and the interest which defendants would have paid according to the terms of the loan documents (13 percent). We disagree that the plaintiff is entitled to default interest but agree it is entitled to delinquency charges.

The note states:

"After maturity *or upon default,* the outstanding unpaid principal balance plus accrued interest will draw interest at the higher of said rate or eighteen percent per annum until paid." (emphasis added)

Plaintiff claims that it is entitled to charge default interest on the entire unpaid principal balance immediately upon that default, regardless of whether the note was also accelerated. *See Merrick v. Peterson,* 25 Wash.App. 248, 606 P.2d 700 (1980). We conclude that default interest is prohibited under the U.C.C.C. prior to giving the notice of default and the resulting failure to cure.

Section 5–5–112, C.R.S. (1989 Cum.Supp.) states in relevant part:

"[C]ure restores the debtor to his rights under the agreement as though the defaults had not occurred."

Section 5–5–112 defines cure as the "tendering of all unpaid sums due at the time of tender, without acceleration, plus any unpaid delinquency ... charges."

Plaintiff claims that § 5–5–112 allows for default interest by requiring that a debtor tender "any unpaid delinquency ... charges." We are not persuaded.

To determine the intent of the General Assembly in allowing for "delinquency charges," we must consider the entire statutory scheme. *See Martinez v. Continental Enterprises,* 730 P.2d 308 (Colo.1986).

Section 5–3–203, C.R.S. (1989 Cum.Supp.) describes the maximum delinquency charges allowed for loans subject to the U.C.C.C. and that maximum charge is ten dollars.

Section 5–3–405, C.R.S., provides that only those charges allowable elsewhere under the code plus reasonable expenses in realizing a security interest are permissible as default charges. Therefore, under § 5–3–405 higher default interest on a note is unenforceable.

We cannot, however, determine the dollar amount which plaintiff is entitled to pursuant to § 5–3–203. The record does not demonstrate when defendant paid the accelerated loan in full or when cure was made, if at all. Furthermore, we cannot determine from the record whether the application of the $100,000 in certificates of deposit cured the default or how many monthly payments it may have been applied towards.

Therefore, the trial court's order granting the defendant's motion for restitution of the attorney fees is affirmed, and the order granting restitution of the default interest is reversed in that it fails to provide for default charges allowed by § 5–3–203. The cause is remanded for further proceedings consistent with the views expressed in this opinion.

CRISWELL and DAVIDSON, JJ., concur.