Lori DIGLIANI, Jack Digliani, Amy Collins, Darla Marshall, Lisa Sanchez, Tony Sanchez, Cassondra Sanchez, Sue Carroll, Janet Sauter, Mark Lenz, Holly Frost Davis, Sharon Nab, Kathy Klinger, Brant Keeney, Janice Deason, and Deborah Tellez, Plaintiffs–Appellants,

v.

CITY OF FORT COLLINS, Colorado, a Municipal Corporation in good standing; Bruce Glasscock, in his official capacity as Chief of Police for the City of Fort Collins, Colorado; Stewart Ellenberg (formerly identified as Stuart Ellenberg), in his official capacity as Risk Manager for the City of Fort Collins, Colorado; Robert Ballard, individually and in his official capacity as facility maintenance employee for the City of Fort Collins, Colorado, Defendants–Appellees.

No. 92CA1223.

Colorado Court of Appeals,
Div. I.

Aug. 19, 1993.

Rehearing Denied Nov. 4, 1993.

Certiorari Granted April 18, 1994.

Bruno, Bruno & Colin, P.C., Marc F. Colin, Richard A. Stubbs, Denver, for plaintiffs-appellants.

Sommermeyer, Wick, Dow & Campbell, Kent N. Campbell, Fort Collins, for defendants-appellees.

Opinion by Judge NEY.

Plaintiffs, employees of the Fort Collins Police Department and their immediate family members, appeal the dismissal of their claims against defendants, City of Fort Collins; its Chief of Police; its Risk Manager; and Robert Ballard, individually and in his official capacity as facility maintenance employee. We affirm.

In 1989, a roofing company that is not a party to this appeal made repairs at the dispatch facility of the Fort Collins Police Department. Thereafter, employees of the police department were exposed to toxic chemicals which originated from this roof repair.

Plaintiffs assert that defendants, though aware of the presence of the noxious fumes, failed to intervene on their behalf to alter the ventilation system and to prevent the chemical vapors from entering their workplace. Further, plaintiffs assert that defendants inadequately investigated the alleged health hazard, concealed information regarding the chemical toxicity· while returning them to work, and failed to provide proper medical attention.

Plaintiffs sought relief based upon claims grounded on common law principles of tort and contracts, as well as on violation of their civil rights under 42 U.S.C. § 1983. Defendants' C.R.C.P. 12(b) motion to dismiss was granted by the trial court.

I.

Plaintiffs first contend that the trial court erred in dismissing their claim for relief under 42 U.S.C. § 1983. We disagree.

To prevail under 42 U.S.C. § 1983, a claimant must allege that the conduct complained of was committed by a person acting under color of state law and also that the conduct deprived the claimant of a constitutional right. *State v. DeFoor*, 824 P.2d 783 (Colo.1992). Furthermore, in *Collins v. City of Harker Heights*, —— U.S. ——, ——, 112

S.Ct. 1061, 1069, 117 L.Ed.2d 261, 274 (1992) the Supreme Court concluded that:

> [n]either the text nor the history of the Due Process Clause supports [a] claim that the governmental employer's duty to provide its employees with a safe working environment is a substantive component of the Due Process Clause.

In *Collins*, the widow of a city sanitation department employee who died of asphyxia after entering a manhole to unstop a sewer line brought a § 1983 action against the city. Her complaint alleged that the city was on notice of this danger to its employees because of a previous incident in which one of its employees had been rendered unconscious in a manhole.

She maintained that her husband had a right under the Due Process Clause of the Fourteenth Amendment to be free from unreasonable risks of harm resulting from the city's custom and policy of deliberate indifference toward the safety of its employees. She then alleged that the city had violated that right by failing to warn its employees of the known risks of entering manholes and by failing to train them to avoid the dangers inherent in working therein.

The court concluded that the claim that the city's alleged failure to train its employees or to warn them about known risks of harm could not be properly characterized as arbitrary or conscience-shocking in a constitutional sense. Consequently, the Supreme Court affirmed dismissal of the complaint on the ground that it did not allege a constitutional violation.

We are unable to distinguish *Collins* from the facts pled here.

■ The due process clause does not purport to supplant traditional tort law by establishing rules of conduct to regulate liability for injuries that arise from living together in society. *Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 677, 88 L.Ed.2d 662 (1986). Furthermore, it "is not a guarantee against incorrect or ill-advised personnel decisions." *Bishop v. Wood*, 426 U.S. 341, 350, 96 S.Ct. 2074, 2080, 48 L.Ed.2d 684, 693 (1976) (quoted in *Collins, supra*.) Here, plaintiffs' claims are "analogous to a fairly typical state tort law claim: the city breached its duty of care by failing to provide a safe work environment." *Collins, supra,* —— U.S. at ——, 112 S.Ct. at 1070, 117 L.Ed.2d at 275.

We also find instructive *McClary v. O'Hare*, 786 F.2d 83 (2d Cir.1986). There, an employee of the county highway department was killed when a wire cable on a crane broke, causing the boom to fall and strike him. Subsequently, an action was brought alleging that the county's deliberate disregard and violation of state law had created a risk of injury or death and, thus, had deprived the decedent of his substantive due process right to life. The Second Circuit, finding that decedent's death was not caused by a constitutional violation, affirmed the trial court's dismissal of the complaint for failure to state a claim upon which relief could be granted.

The *McClary* court additionally concluded that reckless acts of a government employer are not actionable under § 1983 unless the conduct complained of is uniquely governmental in character.

Thus, we conclude that a life or liberty interest has not been violated when, as here, defendants are alleged to have inadequately investigated the health hazard and sent plaintiffs back to work. Consequently, because plaintiffs have failed to state the deprivation of a constitutional right, the trial court did not err in dismissing their claim based upon 42 U.S.C. § 1983.

## II.

Plaintiffs also contend that the trial court erred in its conclusion that their common law claims were barred by the exclusive remedy provisions of the Colorado Workers' Compensation Act. We disagree.

■ An employer who has complied with the provisions of the Workers' Compensation Act is not subject to liability under common law rights and remedies for the death of or personal injury to any employee. Section 8–41–102, C.R.S. (1992 Cum.Supp.); *Rodriguez v. Nurseries, Inc.*, 815 P.2d 1006 (Colo.App.1991). Furthermore, the Workers' Compensation Act constitutes the exclusive

remedy available to an employee if the employee asserts a claim of intentional tort committed by an employer's agent. *Eason v. Frontier Air Lines, Inc.*, 636 F.2d 293 (10th Cir.1981). *See also Ventura v. Albertson's Inc.*, 856 P.2d 35 (Colo.App.1992) (employer may be subject to tort liability for intentional torts only if the employer, rather than employer's agent, deliberately intended to cause the injury). Here, there is no allegation that defendants deliberately intended to cause the injuries suffered by plaintiffs.

Our supreme court, in *Curtiss v. GSX Corp.*, 774 P.2d 873 (Colo.1989), held that the Workers' Compensation Act provides a comprehensive scheme for compensation to employees for job-related injuries as part of a *quid pro quo* under which the employer assumes liability for work-related injuries irrespective of fault, and, in return, employees are precluded from bringing suit at common law.

The no-fault liability system of the Workers' Compensation Act was established to assure employees recovery for their injuries. Therefore, allowing claimants to avoid the statute's exclusive remedy provision by merely alleging intentional torts by an employer and thereby to obtain standing to sue in common law, or to deprive themselves of workers' compensation benefits in order to pursue common law remedies, would be repugnant to the Act.

Moreover, plaintiffs may not circumvent the exclusivity doctrine by framing their claims as breach of contract, breach of implied contract, or promissory estoppel. *See Brown v. City of Colorado Springs*, 749 P.2d 475 (Colo.App.1987). Thus, we conclude that the trial court did not err in its dismissal of these claims based upon the exclusive remedy provisions of the Workers' Compensation Act.

### III.

Finally, plaintiffs contend that the trial court erred in its dismissal of their claims as barred by the Colorado Governmental Immu-

nity Act. Because of our disposition in Part II, we do not address this issue.

Judgment affirmed.

PIERCE and MARQUEZ, JJ., concur.